**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| **VALLEY NATIONAL BANK, A** | : | |
| **NATIONAL BANKING** | : | |
| **ASSOCIATION,** | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action No. 15-4126 (ES) (MAH)** |
| | : | |
| **v.** | : | **OPINION** |
| | : | |
| **FORD MOTOR COMPANY,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

SALAS, DISTRICT JUDGE

### I.      Introduction

Plaintiff Valley National Bank, a National Banking Association ("Valley"), sued Defendant Ford Motor Company ("Ford") as a secured creditor of non-party Chopper DDS, Inc. ("Chopper"). Chopper has filed for bankruptcy. Valley alleges a right to collect upon certain invoices that Chopper sent to Ford for services that Chopper performed for Ford. Valley asserts that these invoices are unpaid. The parties have cross-moved for summary judgment, which raises several issues.

Notably, however, there is a dispositive threshold issue. After Chopper filed a Chapter 11 bankruptcy petition, Chopper conducted business as usual and provided services for Ford for a brief period of time. Chopper then submitted the aforementioned invoices to Ford. Chopper stopped performing services shortly thereafter. In this suit, Valley claims that it is entitled to collect Chopper's post-petition money owed by Ford. But, for the reasons below, Valley has failed to show that it has a valid lien on these post-petition sums due from Ford.

Accordingly, the Court GRANTS Ford's motion for summary judgment and DENIES Valley's motion for summary judgment.[1]

## II.    Relevant Background[2]

### A.  The parties & relevant non-parties

Ford contracted with non-party Schneider Logistics ("Schneider") "to develop, retain, and manage regional shipping carriers and networks to handle the movement of freight (including Ford parts and accessories)."  (D.E. No. 33-7, Ford's Statement of Material Facts ("Ford's SMF") ¶ 15; D.E. No. 36-1, Valley's Response to Ford's Statement of Material Facts ("Valley's RSMF") ¶ 15).  The relationship between Ford and Schneider is governed by an agreement called the Lead Logistics Provider Services Agreement (the "Lead Logistics Agreement").  (Ford's SMF ¶ 16; Valley's RSMF ¶ 16).

Pursuant to the Lead Logistics Agreement, Schneider contracted with non-party Chopper—which is a regional carrier—to deliver and transport Ford products to Ford's dealers.  (Ford's SMF ¶¶ 17-19; Valley's RSMF ¶¶ 17-19).  In particular, Schneider and Chopper entered into the following: (1) the Master Transportation Agreement; (2) the Hartford Schedule; and (3) the Atlanta Schedule.  (Ford's SMF ¶¶ 20, 26; Valley's RSMF ¶¶ 20, 26).[3]

Under the Master Transportation Agreement, Chopper agreed to meet the transportation needs of Schneider and Ford.  (Ford's SMF ¶¶ 21, 23; Valley's RSMF ¶¶ 21, 23).  All payments for Chopper's services pursuant to this agreement were to be made directly to Chopper by Ford.

---

[1]    The Court has jurisdiction under 28 U.S.C. § 1332(a) and resolves the parties' motions without oral argument under Federal Rule of Civil Procedure 78(b).

[2]    These background facts are undisputed unless otherwise noted.  Additional facts are provided elsewhere in this Opinion as relevant to the Court's analysis.

[3]    All of the aforementioned agreements—i.e., the Lead Logistics Agreement, the Master Transportation Agreement, the Hartford Schedule, and the Atlanta Schedule—pre-date October 2013.  (*See* D.E. No. 30-20; D.E. No. 30-21; D.E. No. 30-22; D.E. No. 30-23).

(Ford's SMF ¶ 24; Valley's RSMF ¶ 24).  And, under the Hartford and Atlanta Schedules, Chopper provided delivery services to 180 Ford dealerships and 125 Ford dealerships, respectively.  (Ford's SMF ¶¶ 26, 28, 30; Valley's RSMF ¶¶ 26, 28, 30).  These schedules specifically identified and defined Ford as the customer.  (Ford's SMF ¶ 31; Valley's RSMF ¶ 31).

In particular, Chopper purportedly submitted the following four invoices for the Hartford and Atlanta schedules that are the subject of Valley's claim in this action: (1) an October 5, 2013 invoice for $68,067.72 (Invoice # 43063); (2) an October 5, 2013 invoice for $126,499.73 (Invoice # 43064); (3) an October 12, 2013 invoice for $126,315.12 (Invoice # 43152); and (4) an October 12, 2013 invoice for $70,947.36 (Invoice # 43153).  (Ford's SMF ¶ 70; Valley's RSMF ¶ 70).  Chopper, Schneider, and Ford "conducted business as usual . . . through the week ending October 11, 2013."  (Ford's SMF ¶ 39; Valley's RSMF ¶ 39).  On October 15, 2013, Chopper ceased providing services.  (Ford's SMF ¶ 46; Valley's RSMF ¶ 46).

Valley alleges that Chopper and its affiliates are indebted to it pursuant to "certain notes, letters of credit, guaranties, and other agreements."  (Ford's SMF ¶ 4; Valley's RSMF ¶ 4).  And, to secure this debt, Valley alleges that Chopper granted Valley "a first priority security interest in substantially all of Chopper's assets and those of its affiliated entities, including Chopper's accounts receivable."  (Ford's SMF ¶ 5; Valley's RSMF ¶ 5).[4]

In sum, the relationship among the parties and relevant non-parties is as follows: Schneider provides support to Ford; Schneider entered into an agreement with Chopper to provide delivery services for Ford; Chopper performed certain delivery services for the benefit of Ford; Chopper submitted invoices to Ford for these services; and Valley—as Chopper's secured

---

[4]     Black's Law Dictionary defines an "account receivable," in relevant part, as "a debt owed by a customer to an enterprise for goods or services."  (10th ed. 2014).

creditor—claims an interest over the purported outstanding debt owed from Ford to Chopper. (*See* Ford's SMF ¶¶ 4-5, 15-24, 28, 30, 70; Valley's RSMF ¶¶ 4-5, 15-24, 28, 30, 70).

### B. Chopper's Bankruptcy Proceedings and this Action

Before the dates of the aforementioned four invoices, on October 3, 2013, Chopper filed for Chapter 11 bankruptcy in the U.S. Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court").  (Ford's SMF ¶ 6; Valley's RSMF ¶ 6).  On October 4, 2013, the debtors—i.e., Chopper and certain of its affiliates—filed a motion requesting the Bankruptcy Court to allow "them to continue to be able to use cash collateral to fund their ordinary course operation of the business."  (Ford's SMF ¶ 7; Valley's RSMF ¶ 7).  In this motion, the debtors alleged that they "need access to and the use of Valley's cash collateral to fund their ordinary course operations in accordance" with a certain proposed budget.  (D.E. No. 36-3 ¶ 11).

As part of this motion, the debtors "sought to provide Valley a rollover lien in their post-petition collateral."  (Ford's SMF ¶ 7; Valley's RSMF ¶ 7).  More specifically, Chopper argued that "Valley [would be] adequately protected by virtue of a replacement lien on the Debtors' assets, and absence of diminution in value because the Debtor will be replacing cash collateral at a minimum of the same rate, if not greater, than which it consumes cash collateral in its operation."  (D.E. No. 36-3 ¶ 17).  Valley objected to the debtors' motion.  (Ford's SMF ¶ 8; Valley's RSMF ¶ 8).

On October 7, 2013, the Bankruptcy Court held a hearing on Chopper's application.  (*See* D.E. No. 36-5).  During the hearing, Chopper represented to the Bankruptcy Court that Chopper and Valley agreed to various things, including: "as an adequate protection payment . . . to make a payment in the amount of per diem interest from the petition date through the date of the interim hearing."  (*Id.* at 10:2-6).  The Bankruptcy Court so ordered "the terms placed on the record and

by debtor's counsel," but no written order was formally entered.  (*Id.* at 17:8-10; Valley's RSMF ¶ 9).

On October 22, 2013, the Bankruptcy Court converted the Chapter 11 bankruptcy proceeding to a Chapter 7 proceeding.  (D.E. No. 33-1 ¶ 16 (citing bankruptcy docket)).  On October 23, 2013, the Bankruptcy Court denied the debtor's cash-collateral motion.  (*Id.* ¶ 14).

Valley brought this action "to collect the balance due on an account between Ford and [Chopper]" because Valley had "directed Ford to pay amounts due to Chopper directly to [Valley], but Ford has failed and refused to do so."  (D.E. No. 1-1 ¶¶ 1, 17).  Valley asserts the following three counts: (1) breach of contract (i.e., contracts between Ford and Chopper) allegedly in view of Valley having a first-priority perfected lien against Chopper's account receivable and being able to enforce payment obligations (*id.* ¶¶ 18-24); (2) unjust enrichment allegedly in view of Ford having "received from Chopper the services described [in the complaint] without paying for those services" (*id.* ¶¶ 25-27); and (3) a "book account" claim because Ford allegedly "owes Chopper money on a certain book account for services rendered to, and accepted by, Ford by Chopper" (*id.* ¶¶ 28-32).

Valley moved for summary judgment on the first two counts of its complaint and sought a judgment of $391,829.93—which is the sum of the four allegedly outstanding invoices that Chopper sent to Ford excluding miscellaneous expenses.  (*See* D.E. No. 30-3 (proposed order); Ford's SMF ¶ 70; Valley's RSMF ¶ 70).[5]  Ford cross-moved for summary judgment, seeking dismissal of this action.  (D.E. No. 33-8).

---

[5]     As such, it is unclear why Valley moved for summary judgment on two of its three counts, but did not style its motion as a partial summary judgment motion.  In any event, the Court need not endeavor to resolve this issue because it is granting Ford's motion for summary judgment that seeks dismissal of this entire action.  (*See* D.E. No. 33-8 (proposed order)).

### III.    Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine" issue of material fact exists for trial "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The movant bears the initial burden of establishing that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the non-moving party bears the burden of proof at trial, the moving party may discharge its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.  If the movant meets this burden, the non-movant must then set forth specific facts that demonstrate the existence of a genuine issue for trial.  *Id.* at 324; *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010).

Conversely, where the moving party bears the burden of proof at trial, it "must show that it has produced enough evidence to support the findings of fact necessary to win." *El v. Se. Pa. Transp. Auth. (SEPTA)*, 479 F.3d 232, 237 (3d Cir. 2007).  "Put another way, it is inappropriate to grant summary judgment in favor of a moving party who bears the burden of proof at trial unless a reasonable juror would be compelled to find its way on the facts needed to rule in its favor on the law." *Id.* at 238.

Notably, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.  But the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Swain v. City of Vineland*, 457 F. App'x 107, 109 (3d Cir. 2012) (stating that the non-moving party must support its claim "by more than a mere scintilla of evidence").

Finally, "[t]he summary judgment standard does not change when . . . the parties have filed cross-motions for summary judgment." *Wimberly Allison Tong & Goo, Inc. v. Travelers Prop. Cas. Co. of Am.*, 559 F. Supp. 2d 504, 509 (D.N.J. 2008) (citing *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987)), *aff'd* 352 F. App'x 642 (3d Cir. 2009). "Such motions [ ] 'are no more than a claim by each side that it alone is entitled to summary judgment . . . .'" *Transportes Ferreos de Venezuela II Ca v. NKK Corp.*, 239 F.3d 555, 560 (3d Cir. 2001) (quoting *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968)).

## IV.   Discussion

### A.  The Parties' Arguments

Ford argues that, "unless a bankruptcy court orders otherwise, a pre-petition security interest, such as Valley's, does not extend to post-petition after-acquired property." (D.E. No. 33-6 ("Def. Mov. & Opp. Br.") at 11). Ford contends that, here, "all of the accounts receivable Valley is trying to collect are post-petition accounts receivable." (*Id.* at 12). It asserts that there "is no order on the [Bankruptcy Court case] docket granting Valley a security interest in Chopper's post-petition accounts receivable" and "Valley has no rights in the accounts receivable at issue in this case." (*Id.*; *see also* D.E. No. 37 ("Def. Reply & Opp. Br.") at 8 ("[B]ecause Valley was not granted a post-petition lien on Chopper's post-petition accounts receivable in the Bankruptcy Case, it simply has no rights in or to those assets." (citations omitted))).

In sum, Ford states there is no dispute that what Valley is trying to collect from Ford in this action are "post-petition accounts receivable"—but that there is no order in the bankruptcy proceeding "granting Valley a security interest in Chopper's post-petition accounts receivable." (Def. Reply & Opp. Br. at 9). Ford moves for summary judgment on this issue and argues that this threshold issue bars Valley any recovery here. (*See* Def. Mov. & Opp. Br. at 11-12; Def. Reply & Opp. Br. at 1).

In opposition, Valley contends that—when Chopper filed a motion requesting the Bankruptcy Court to allow it to continue to use cash collateral to fund the ordinary course operation of the business—Chopper submitted a proposed order that (among other things) granted Valley a post-petition replacement lien. (D.E. No. 36 ("Pl. Reply & Opp. Br.") at 2).[6] At the October 7, 2013 Bankruptcy Court hearing, Valley contends that it agreed "to terms, in addition to those already offered in Chopper's application, whereby [Valley] would agree to Chopper's use of cash collateral pending the interim hearing." (*Id.*). Valley notes that, upon the parties' request in that proceeding, the Bankruptcy Court "'so ordered' the record on the emergent application with the understanding that an order would subsequently be submitted and entered," even though "no order was ultimately entered." (*Id.* at 2-3).

In light of this, Valley maintains that it "has a lien on post-petition receivables arising from its consent to allow Chopper to use cash collateral on an interim basis at the commencement of Chopper's bankruptcy case." (*Id.* at 3). More specifically, Valley represents that Chopper had argued that Valley "would be adequately protected by a post-petition replacement lien" and Valley "consented to the interim use of cash collateral for a short period

---

[6]   The parties occasionally use the phrase "*replacement* lien." (*See, e.g.*, Pl. Reply & Opp. Br. at 2 (emphasis added)). This is likely because Valley relies on Chopper's proposed order accompanying Chopper's October 4, 2013 cash-collateral motion in the Bankruptcy Court. (*See* Pl. Reply & Opp. Br. at 3; D.E. No. 36-4 at 6 ¶ 2). The Court cannot, however, decipher a relevant distinction between "replacement lien" and any other way the parties characterize the post-petition lien.

pending a later determination as to whether Chopper could continue operating using cash collateral." (*Id.*). It argues that Valley "was entitled to adequate protection for the interim use of cash collateral, Chopper offered a replacement lien, [Valley] consented, and the court 'so ordered' the record." (*Id.*).

Citing 11 U.S.C. § 363(e), Valley posits that, "[u]pon the objection of a party with an interest in cash collateral, the court cannot allow its use without providing for adequate protection of the secured party"—and, "given that the court was required to provide for adequate protection, [Valley] obtained a replacement lien as a result of its consent to Chopper's emergency motion to use cash collateral." (*Id.* at 3-4).

### B.  A Creditor's Security Interest Over a Debtor's Post-Petition Accounts Receivable

Except for certain statutory exceptions, "property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case."  11 U.S.C. § 552(a).  "Section 552(a) states the general rule that a prepetition security interest does not reach property acquired by the estate or debtor postpetition."  *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 374 (1988); *see also In re Ledis*, 259 B.R. 472, 477 (Bankr. D. Mass. 2001) ("Section 552 of the Code governs attachment of pre-petition security interests to post-petition property that would otherwise become collateral upon the debtor acquiring rights in the collateral absent the debtor's bankruptcy. Under § 552(a), no pre-petition security interest with an after acquired property provision attaches to a debtor's post-petition property." (citation omitted)).  "[T]he purpose of § 552 is to permit a debtor to gather into the estate as much money as possible to satisfy the claims of all creditors . . . ."  *In re Days Cal.*

*Riverside Ltd. P'ship*, 27 F.3d 374, 375 (9th Cir. 1994) (citation and internal quotation marks omitted).

A debtor's "billings for . . . services performed postpetition constitute property acquired by the estate after the commencement of the case"—and, "[u]nless the exception provided in § 552(b) applies, [the creditor's] prepetition security interest does not attach to postpetition accounts receivable." *In re Cybridge Corp.*, 304 B.R. 681, 689 (Bankr. D.N.J. 2004), *aff'd*, 312 B.R. 262 (D.N.J. 2004). "In order for a creditor with a prepetition lien to continue that lien in property acquired by a debtor postpetition, it is incumbent on the secured party to obtain a court order granting a lien in post-petition property (commonly referred to as a 'rollover lien')." *In re Three Partners, Inc.,* 199 B.R. 230, 239 (Bankr. D. Mass. 1995).[7]

## C. The Record Fails to Support that Valley Has A Valid Lien on Chopper's Post-Petition Receivables

Whether Valley has a valid lien on Chopper's post-petition receivables is a threshold issue. (*See, e.g.*, Pl. Reply & Opp. Br. at 3-4; Def. Reply & Opp. Br. at 2-9). For instance, Valley asserts that it "*is entitled to collect Chopper's receivables* and Chopper holds a valid receivable from Ford." (Pl. Reply & Opp. Br. at 1 (emphasis added)). In fact, Valley unequivocally asserts that it "has a lien on post-petition receivables." (*Id.* at 3).[8] For its part, Ford argues that, "because Valley was not granted a post-petition lien on Chopper's post-petition accounts receivable in the Bankruptcy Case, it simply has no rights in or to those assets." (Def.

---

[7]     *See also In re Cantu*, Nos. 08-70260 & 08-70261, 2011 WL 160563, at 2 (Bankr. S.D. Tex. Jan. 18, 2011) ("A debtor can agree to allow a creditor's lien on after acquired property to extend to property acquired post-petition. To continue its prepetition lien on after-acquired property, a secured creditor must obtain an order approving the continuation of its lien to after-acquired property." (citations and internal quotation marks omitted)); *In re Commercial Millwright Serv. Corp.*, 245 B.R. 585, 592 (Bankr. N.D. Iowa Feb. 23, 1998) ("If a creditor fails to obtain an order approving the continuation of its lien on § 552(a) prevents the prepetition lien from attaching to later acquired property of the estate or of the debtor." (citation omitted)).

[8]     To be sure, there is no dispute that the sums due that are at issue in this case are post-petition sums. (*See, e.g.*, Pl. Reply & Opp. Br. at 3; *id.* at 7; Def. Reply & Opp. Br. at 1).

Reply & Opp. Br. at 8).  The issue then is whether the record supports that Valley has such a lien.

As noted, generally, "property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case."  11 U.S.C. § 552(a).  This rule is subject to § 552(b)—but Valley makes no argument whatsoever that § 552(b) applies here.

Rather, without citing any law, Valley purports to have a lien on post-petition receivables given its "consent to allow Chopper to use cash collateral on an interim basis at the commencement of Chopper's bankruptcy case" at the October 7, 2013 Bankruptcy Court hearing.  (*See* Pl. Reply & Opp. Br. at 2-3).  Valley concedes that the Bankruptcy Court never entered an order granting it "a post-petition replacement lien," as was proposed by Chopper. (*See* Pl. Reply & Opp. Br. at 3; *see also* D.E. No. 36-4 (Chopper's proposed order wherein Valley would receive, as adequate protection, post-petition replacement liens)).

Importantly, Valley seems to concede that some form of judicial decree is required for it to have a lien on post-petition receivables due to Chopper.  After all, Valley argues that: (1) it consented—on the record at the October 7 Bankruptcy Court hearing—to the interim use of cash collateral for a short period pending a later determination as to whether Chopper could continue operating using cash collateral; (2) it has a "lien on post-petition receivables *arising from*" this consent; and (3) the Bankruptcy Court "so ordered" the record pending entry of an order.  (*See* Pl. Reply & Opp. Br. at 3 (emphasis added)).

Accordingly, Valley does not contest that it needs a lien on Chopper's post-petition receivables and it needs a court order to prevail in this action.  But, even accepting that a so-ordered transcript suffices, the Court simply cannot see how the October 7 transcript grants

Valley (as adequate protection or for any other reason) a post-petition lien.  Instead, the October 7 transcript shows that Chopper and Valley reached "an agreement with regard to cash collateral authorization through an interim hearing."  (D.E. No. 36-5 at 8:6-8).  In particular, the October 7 transcript reveals that Chopper and Valley agreed that Chopper would, "as an adequate protection payment without prejudice to anybody's rights as to the application, . . . . make a payment in the amount of per diem interest from the petition date through the date of the interim hearing."  (*Id.* at 10:2-6).  As Ford aptly states (Def. Reply & Opp. Br. at 9), the October 7 transcript is devoid of any reference to Valley being granted a lien on Chopper's post-petition accounts receivable.

And what the Bankruptcy Court did was "so order[] the terms placed on the record and by debtor's counsel . . . and all the affirmations that both sides made in the course of numbers not to exceed dollar amounts and so on."  (*Id.* at 17:8-12).  Critically, the Bankruptcy Court stated that it would "await" a proposed order embodying the representations made on the record.  (*See id.* at 16:24-17:19).  Thus, nothing suggests that Chopper's *proposed* order—which ostensibly gave Valley a post-petition replacement lien—governs.

To be sure, Valley's citation to 11 U.S.C. § 363(e) and the requirement for adequate protection is unpersuasive.  (*See* Pl. Reply & Opp. Br. at 3).  11 U.S.C. § 363(e) provides as follows:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. This subsection also applies to property that is subject to any unexpired lease of personal property (to the exclusion of such property being subject to an order to grant relief from the stay under section 362).

Citing this statutory provision, Valley asserts that, "[u]pon the objection of a party with an interest in cash collateral, the court cannot allow its use without providing for adequate protection of the secured party."  (Pl. Reply & Opp. Br. at 3).

Again, as Ford aptly points out (*see* Def. Reply & Opp. Br. at 9), adequate protection is not mandated to be in the form of a lien on post-petition property or assets.  Indeed, this is an unsupported assumption in Valley's position.   Rather, under 11 U.S.C. § 361, adequate protection may be in the form of cash payments or other relief that a court deems appropriate. *See* 11 U.S.C. § 361(3); *see also In re Swedeland Dev. Grp., Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) (en banc) ("The Code does not expressly define adequate protection, but section 361 states that it may be provided by (1) periodic cash payments; (2) additional or replacement liens; or (3) other relief resulting in the 'indubitable equivalent' of the secured creditor's interest in such property. The last possibility is regarded as a catch all, allowing courts discretion in fashioning the protection provided to a secured party. Therefore, a determination of whether there is adequate protection is made on a case by case basis.") (citations omitted).

Further, Valley misstates the record when it asserts that it "was entitled to adequate protection for the interim use of cash collateral, Chopper offered a replacement lien, [Valley] consented, and the [Bankruptcy Court] 'so ordered' the record."  (*See* Pl. Reply & Opp. Br. at 3). The record reveals that Chopper submitted a proposed order incorporating a replacement lien as adequate protection—but that Valley and Chopper reached an agreement during the October 7 hearing providing for *different* adequate protection on the record and the Bankruptcy Court "so ordered" this record.  (*See* D.E. No. 36-4 at 6 ¶ 2; D.E. No. 36-5 at 10:2-6).  There was no reference regarding a lien on Chopper's post-petition property or assets.  In particular, there was no incorporation by reference of Chopper's proposed order in the October 7 transcript.

In other words, at best, Valley invites the Court to *infer* that, because Chopper submitted a proposed order that would grant Valley a post-petition lien as adequate protection, Valley in fact *has* a post-petition lien—notwithstanding the absence of any court order or mention of granting Valley such a lien on the record during the October 7 Bankruptcy Court hearing.  Valley gives the Court no basis in law or fact—much less a reasonable one—to do so.  Indeed, doing so improperly asks the Court to ignore the lack of any reference in the October 7 hearing to a lien and the Bankruptcy Court's statement that it would "await" a proposed order embodying the representations made on the record on October 7.  (*See* D.E. No. 36-5 at 16:24-17:19).

In sum, the Court rules that there is an insufficient basis to find that Valley has a lien on Chopper's post-petition receivables and, therefore, Valley is not entitled to any of the sums it seeks in this matter.

## D.  The Court Need Not Reach Ford's Setoff and Recoupment Defenses

The parties hotly contest whether Ford is entitled to a setoff or a recoupment.  (*See, e.g.*, D.E. No. 30-1 ("Pl. Mov. Br.") at 12-19; Def. Mov. & Opp. Br. at 12-28; Pl. Reply & Opp. Br. at 4-10; Def. Reply & Opp. Br. at 9-12).   The parties' briefing, however, reveals that the applicability of Ford's defenses assume that Valley has a valid lien on Chopper's post-petition receivables in the first place.  (*See, e.g.*, Def. Mov. & Opp. Br. at 12-13; Pl. Reply & Opp. Br. at 1; Def. Reply & Opp. Br. at 9).  Because the Court has ruled that Valley does not have a basis to bring this action to collect the remaining unpaid post-petition Chopper invoices (i.e., the post-petition account receivables), it declines to reach whether Ford is entitled to a setoff or a recoupment.

**V.      Conclusion**

For the reasons set forth above, the Court GRANTS Ford's motion for summary judgment and DENIES Valley's motion for summary judgment.   This case is therefore DISMISSED.  An appropriate order accompanies this Opinion.

*/s/ Esther Salas*
**Esther Salas, U.S.D.J.**
